### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Case No. 21-cr-286-BAH** |
| **JASON OWENS,** | |
| **Defendant.** | |

### GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. For the reasons set forth herein, the government requests that this Court sentence Jason Owens to twenty-seven months incarceration, three years supervised release, $2,000 restitution, and the mandatory assessment of $100 for the felony conviction. The Sentencing Guideline range, as calculated by all parties, is twenty-four months to thirty months. A recommendation of twenty-seven months incarcerations is the midpoint as it relates to the guidelines range.

### I.    INTRODUCTION

The defendant, Jason Owens, enthusiastically participated in the January 6, 2021, attack on the United States Capitol—a violent attack that forced an interruption of the certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential election, injured more than one hundred police officers, and resulted in more than 2.8 million dollars in losses.[1]

---

[1] As of October 17, 2022, the approximate losses suffered as a result of the siege at the United States Capitol was $2,881,360.20. That amount reflects, among other things, damage to the

1

Jason Owens, a forty-eight-year-old pharmaceutical director, and his son, Grady Owens, joined a crowd gathering on the Northwest lawn. This is an area in front of the West Plaza, Lower West Terrance (LWT), and the Inaugural Stage scaffolding. These areas became key battle ground points which, once overrun, allowed rioters to access the building. Members of this ever-growing crowd, including his son, Grady, became verbally hostile toward United States Capitol Police (USPC). As a squad of officers from the Metropolitan Police Department (MPD) attempted to cut through the lawn, to assist USPC on the Plaza and Lower West Terrace (LWT), the crowd, including Jason and Grady Owens, refused to move. After the rioters ignored the officers' verbal commands to move, officers began pushing members of the crowd out of their way.  Numerous officers had already made it past the Owenses' when MPD Officers C.B. and N.D. approached them.

Officer C.B. pushed someone out of his way, in response, Grady Owens violently attacked Officer C.B. by raising his skateboard above his head and bringing it down to strike C.B. on the upper right part of his body. This assault sparked a ripple effect melee, during which, Jason Owens put his hand on Officer N.D.'s helmet and pushed hard enough to cause Officer N.D.'s head to snap back. After the skirmish settled, the Owenses yelled and pointed in officers' faces. Grady also gave officers the middle finger. The Owenses then made their way to the East Rotunda doors where they were emersed in a mob pushing, grabbing, and swinging at more uniformed officers.

The government recommends that the Court sentence Jason Owens to twenty-seven months' incarceration for his conviction of violating 18 U.S.C. 111(a), which is within the advisory

---

United States Capitol building and grounds and certain costs borne by the United States Capitol Police.

Guidelines' range of twenty-four to thirty months, which the government submits is the correct Guidelines calculation. A twenty-seven-month sentence reflects the gravity of Jason Owens's conduct, but also acknowledges his admission of guilt.

## II.      FACTUAL BACKGROUND

### A.      The January 6, 2021, Attack on the Capitol

The government refers the Court to the stipulated Statement of Offense filed in this case, ECF 100, for a short summary of the January 6, 2021, attack on the United States Capitol by hundreds of rioters, in an effort to disrupt the peaceful transfer of power after the November 3, 2020, presidential election.

### B.      Jason Owens' Role in the January 6, 2021, Attack on the Capitol

#### *Approach to the Capitol*

Jason Owen's, a then pharmaceutical director and father of five, participated in the January 6 attack on the Capitol. His crimes are documented through a series of MPD body worn cameras (BWC), open-source media, United Sttes Capitol Police (USCP) surveillance footage from inside of the Capitol, and videos and photographs taken by his son, Grady Owens.

Jason Owens traveled to Washington, D.C., with his son and parents, from his family's home in Blanco, Texas, on January 5, 2021. The Owenses attended the "Stop the Steal" rally on January 6, 2021. Notably, Jason Owens wore a camo jacket, gray jeans, gray hat, and a green gator while Grady Owens wore a red jacket and black pants. Grady Owens carried a skateboard with him that day while Jason Owens was in possession of a scooter.



**Image 1:** *Still from an open source, at :39-:42 seconds) showing Grady (yellow circle) and Jason Owens (green circle) near the rally[2]*

At the rally, the Owenses watched Trump's speech. Grady Owens took video of the rally

on his mobile phone. The video showed Trump denying the election results[3] and rioters waving a

---

[2] Available at
https://ia903109.us.archive.org/19/items/6bdmfu2DDuAczZAsC/6bdmfu2DDuAczZAsC.mpeg4
(:39-:42 seconds)
[3] *See* Exhibit 4.

4

flag of Donald Trump depicted as Rambo.



*Image 2: Still from Grady Owens' phone **(Exhibit 4[4])***



*Image 3: **Photo from G. Owens' phone of a banner depicting a machine gun wielding Trump as Rambo (Exhibit 2)***

After Trump's speech, Grady and Jason Owens went to the Capitol Grounds. The pair

worked their way up the Northwest lawn towards the West Plaza. Grady Owens captured their

arrival on his cell phone. In Exhibit 5, Grady Owens can be heard commenting on an arrest made

---

[4] In advance of the change of plea, the government provided exhibits and an exhibit list in support of the statement of offense. The government will resubmit the list, with a few additions, in support of this sentencing memorandum.

by USCP officers, stating, "And they're going to keep arresting people unless we all get our asses

up there!"



*Image 4: Still from **Exhibit 5** in which, at 00:38 seconds, Grady comments on a fellow rioter's arrest (circled) on the Northwest stairs*

Grady Owens continued to document the ever-growing hostility and sentiments in the crowd.



*Image 5: Grady photographed a sign reading "If the dead can vote just wait and see what the living can do" **(Exhibit 31)***

### *Jason Owens' Conduct on Capitol Grounds*

Grady Owens began to taunt USPC officers as they attempted to protect the Capitol building and maintain order. *See* Exhibits 21-24. Grady Owens made many statements, while recording video on the lawn, including, "That ain't gonna do much traitor…Hold these traitors accountable,"[5] "We will not concede,"[6] "They breached it. You can't stop us,"[7] and "Tear gas ain't shit, folks."[8]



**Image 6:** *Still from* **Exhibit 23** *shows rioters, on the Northwest stairs, raising barricades above their heads as Grady proclaimed, "They breached it. You can't stop us!"*

---

[5] *See* Exhibit 21 at :38 seconds. Owens said that while recording USCP officers deploying pepper spray and firing pepper balls into the riot.
[6] *See* Exhibit 22 at :25 seconds.
[7] *See* Exhibit 23 at :12 seconds.
[8] *See* Exhibit 24 at :02 seconds.

As Jason Owens and his fellow rioters continued to present an active security risk for both USCP officers and the Capitol Building itself, MPD officers, equipped with body worn cameras arrived as much needed reinforcements for the USCP officers. Officer N.D. and his fellow MPD officers were wearing full riot gear. They had a quick briefing before falling into a two-by-two formation that marched the length of the Northwest lawn.[9] MPD Officer P.M. yelled "Police department, move aside" numerous times as he led the way. Members of the mob took note of the police presence and began to verbally harass the officers marching behind Officer P.M.



*Image 7: Side-by-side stills from **Exhibit 11** showing MPD getting into formation (L) and a USCP officer assisting MPD through Pennsylvania Circle to the West Plaza (R)*

The crowd grew so dense that the officers had to fall back one-by-one, holding onto each other by putting their arms on each other shoulders. *See* Exhibit 18 at 5:30. As lead Officer P.M. met increasing resistance, he began to push rioters out of the way, continuing to announce the MPD officers' presence. Officer P.M. pushed past Grady and Jason Owens, and, in response,

---

[9] The government refers the Court to Exhibits 11 through 19. These BWC video exhibits have been labeled in approximately chronological order.  The government suggests watching these exhibits in numerical order as it paints a complete picture. The exhibit list provides the relevant time stamps for each video exhibit.

Grady yelled, "Hey!" as Jason pushed back against the officers. Someone yelled the word, "Traitor!" numerous times. *See* Exhibit 12 at 6:10-6:15.

Grady Owens was filming the crowd at this exact moment. As he turned, he captured on the video the line of officers attempting to get through the crowd. In the screen shot immediately below, Officer N.D. is positioned somewhere in the line of officers behind the man in the gray and black sweatshirt and camo print hat.



***Image 8:*** *Still from **Exhibit 6** showing the moment MPD reached the Owenses (see time stamp :23)*

Grady Owens took the time to put his cell phone away before he and Jason Owens engaged in physical assaults with the MPD officers. BWC video shows Grady shouting, "fuck off." *See* Exhibit 15 at 6:08 and Exhibit 16 at 6:10.



*Image 9: Still from **Exhibit 13** captured Grady Owens registering police presence and putting his phone away as Jason Owens shoves with an MPD officer (see time stamp 5:30—5:37)*



*Image 10: Still from **Exhibit 16**. Exhibit 16 is BWC that captured Grady pushing against an MPD officer while saying "fuck off." Officer C.B. was still two or three officers back at this point (see time stamp 6:10-6:14)*

### *The Assault of Officer N.D.*

At approximately 2:00 P.M., Officer C.B. had to move people out of his way as he nears

Grady Owens.   Grady Owens then raised his skateboard above his head and brought it down, with

full force, onto the right side of Officer C.B. *See* Exhibit 18 at 6:15 through 6:25 and Exhibit 19 at

6:00 through 8:00. In response, the riot members, including Jason Owens, began shoving officers.

Jason Owens stuck Officer N.D. in the chin area, causing Officer N.D.'s head to snap back.



*Image 11*: *Showing Jason Owens striking Officer N.D. on the face*[10]

---

[10] This photo was preserved from a Facebook account that is no longer active. See Exhibit 20.



**Image 12:** open source photograph *showing Jason hitting Officer N.D from an additional angle*

The police officer and rioters at that location continued to skirmish for approximately thirty seconds after Grady Owens struck Officer C.B. Once the crowd calmed down, the Owenses continued to yell at and taunt the officers. For instance, Grady asked the officers, "How can you live with yourselves, huh?" *See* Exhibit 31 at 5:00.



*Image 13: Still from Exhibit 32 at 5:05*

A short time later, Grady held up his middle finger in offices' faces. *Id*. at 5:10.



*Image 14: Still from Exhibit 32 (at 5:10) where Grady says "mother fucker" to officers and holds up his middle finger*

***Jason Owens' Continued Conduct on Capitol Grounds Post Assault***

Officer N.D. and his fellow MPD officers left the area and continued their response to rioters on the Lower West Terrace. Rather than retreating from the chaos, Grady and Jason Owens remained on the Northwest Lawn for an undetermined amount time, before making their way to the East Rotunda Doors.



**Image 15:** *Still from open source[11]*

---

[11] Available at https://www.alamy.com/washington-usa-06-january-2021-supporters-of-president-donald-j-trump-breach-capitol-hill-during-the-certification-of-the-electoral-colleges-vote-image396742212.html

At approximately 3:25 p.m., after traveling from the west to the east side of the Capitol Building, Jason and Grady Owens attempted to enter the Capitol building at the East Rotunda doors.



*Image 16: Open-source photograph showing the Owens' nearing a police line holding back rioters at the East Rotunda. Jason Owens appears to be pointing at officers (Exhibit 25)[12]*

Grady and Jason Owens were part of a crowd that attempted to push their way into the East Rotunda doors without success. Grady Owens filmed the hectic scene at the East Rotunda as well, commenting on the fact police were "macing" rioters to prevent them from accessing the building. *See* Exhibit 26 at 00:12 seconds. Grady Owens also appeared to be giving directions to fellow rioters by yelling "Left side out-right side in, come on!" *Id.* at 00:22-:25 seconds. The Owenses

---

[12] Available at https://www.gettyimages.com/detail/news-photo/police-intervenes-in-us-president-donald-trumps-supporters-news-photo/1230459039

made it to the threshold of the Rotunda doors where a group of MPD and USCP officers desperately tried to prevent entry. *See* Exhibit 27 and 28.



*Image 17: Still from **Exhibit 27** showing Jason Owens' hand pointing towards the inside of the Capitol building (time stamp 00:21)*



*Image 18: Still from **Exhibit 28** (at 3:28 p.m.) showing the Owenses' at the threshold of the Capitol*

At approximately 3:29 p.m., Jason Owens tried to grab USCP Officer M.B. Jason Owens then blocked the door from being closed. *See* Exhibit 28 at 3:28 p.m.-through :30p.m.  Officer M.B. exited the door and moved toward Jason Owens who then grabbed Officer M.B.'s baton. *Id.* The two pushed back and forth for a short period of time before Officer M.B. was able to push Jason Owens away. *Id.* Grady also appears to swing a flag, in a similar downward motion as he did with the skateboard, as if to break up the officer and his father. *Id.*[13]



**Image 19:** *Still from **Exhibit 28** (at 3:29:48 p.m.)*

---

[13] The government anticipates Jason Owens will present mitigation to allay his conduct on both the West and East front.  Though the government does not dispute the existence of the mitigation generally, the government maintains its ability to argue the mitigation does it does not diminish the conduct. The government will ask this Court to weigh the evidence against the mitigation and, as argued in this memo, consider the East front conduct an aggravating factor when fashioning its sentence.  Jason Owens also admitted to the conduct by signing the statement of offense. See ECF No. 100 at paragraph 13.

The Owenses were not successful in getting into the Capitol. Eventually they left the Capitol grounds after memorializing their presence with a celebratory portrait photo.



*Image 20: Photograph, from Grady's phone, of the Owenses in front of the "War" statue[14] flanking the East Front Entrance to the Capitol building (Exhibit 1)*

### Jason Owens' Statements

FBI agents interviewed Jason Owens on April 4, 2021. Jason admitted to being at the Capitol but falsely denied being involved in any violence.

---

[14] Information regarding the statute available at https://www.aoc.gov/explore-capitol-campus/art/war-and-peace

### III.    THE CHARGES AND PLEA AGREEMENT

On November 17, 2021, a federal grand jury returned a superseding indictment charging Jason Owens with seven counts, including Count Four, 18 U.S.C. § 111(a). On, November 10, 2022, Jason Owens was convicted of Count Four based on a guilty plea entered pursuant to a plea agreement.

### IV.    STATUTORY PENALTIES

Jason Owens now faces sentencing on Count Four, 18 U.S.C. § 111(a), As noted by the plea agreement and the Presentence Report Jason Owens faces up to 8 years of imprisonment, a term of supervised release of not more than three years, a fine up to $250,000, and a mandatory special assessment of $100 for Count Four.

### V.    THE SENTENCING GUIDELINES AND GUIDELINES ANALYSIS

As the Supreme Court has instructed, the Court "should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *United States v. Gall*, 552 U.S. 38, 49 (2007).

The Guidelines analysis follows:

Count Two: 18 U.S.C. § 111(a)

| | | |
|---|---|---|
| U.S.S.G. § 2A2.2(a) | Base Offense Level | 14 |
| U.S.S.G. § 3A1.2(b) | Official Victim | +6 |
| Acceptance of responsibility (U.S.S.G. §3E1.1) | | -3 |
| **Total Adjusted Offense Level:** | | **17** |

*See* Plea Agreement at ¶ 5(A).

The U.S. Probation Office calculated the Jason Owens' criminal history as Category I, which the government does not dispute. PSR ¶ 47. Accordingly, based on the government's

calculation of Jason Owens's total adjusted offense level, after acceptance of responsibility, at 17, the Guidelines advisory imprisonment range is 24 to 30 months' imprisonment. The Jason Owens' plea agreement contains an agreed-upon Guidelines range calculation that mirrors the calculation contained herein.

## VI.    SENTENCING FACTORS UNDER 18 U.S.C. § 3553(A)

In this case, sentencing is guided by 18 U.S.C. § 3553(a). As described below, on balance, the Section 3553(a) factors weigh in favor of a lengthy term of incarceration.

### A.    Nature and Circumstances of the Offense

As shown in Section II(B) of this memorandum, Jason Owens's violent felonious conduct on January 6, 2021, was part of a massive riot that almost succeeded in preventing the Certification Vote from being carried out, frustrating the peaceful transition of Presidential power, and throwing the United States into a Constitutional crisis. Jason Owens partook in a criminal event that is still, to this day, unparalleled in American history.

The nature and circumstances of this defendant's crimes weigh heavily in favor of a significant term of incarceration. Jason Owens struck a uniformed police officer, who was simply responding to an ongoing emergency, in the face. After assaulting the officer, Jason Owens did not leave the grounds. Instead, he traversed to the East Rotunda doors where he engaged with a large group of rioters attempting to attempt to gain access to the Capitol Building itself. The nature and circumstances of Jason Owen's offenses were of the utmost seriousness, and fully support the government's recommended sentence of 27 months.

### B.  Jason Owens' History and Characteristics

Jason Owens is a former director at a pharmaceutical company. PSR ¶ 96. He has no prior

juvenile nor adult convictions. Though Jason Owens has maintained a law-abiding life thus far, he both joined a riot and viciously assaulted a uniformed police officer, all while hiding his face. Furthermore, did not hit a MPD officer just anywhere. He targeted Officer N.D.'s face and head, this was all done despite his peaceful and "great upbring" that he then mirrored for his children (that is until January 6th). *See* PSR ¶¶ 63. Furthermore, Jason displayed a lack of respect for officers and authority on January 6, 2021.

### C.  The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

As with the nature and circumstances of the offense, this factor supports a sentence of incarceration. Jason Owens' criminal conduct, shoving a uniformed officer's head with full force, was the epitome of disrespect for the law. Especially when the criminal assaultive conduct was accompanied by hostile taunting and continued aggressive conduct towards police at the East Rotunda doors.

### D.  The Need for the Sentence to Afford Adequate Deterrence

#### *General Deterrence*

A significant sentence is needed "to afford adequate deterrence to criminal conduct" by others. 18 U.S.C.§ 3553(a)(2)(B). The need to deter others is especially strong in cases involving domestic terrorism, which the breach of the Capitol certainly was.[15] The demands of general deterrence weigh strongly in favor of incarceration, as they will for nearly every case arising out of the violent riot at the Capitol.

---

[15] *See* 18 U.S.C. § 2331(5) (defining "domestic terrorism").

*Specific Deterrence*

The need for the sentence to provide specific deterrence to this particular defendant also weighs heavily in favor of a lengthy term of incarceration. Although Jason Owens has pleaded, his actions after assaulting N.D. (behavior at the East Rotunda) were those of a man dead set on battle. Although the government appreciates Jason Owens' acceptance of responsibility, it should not be overlooked that he denied engaging in any violence on January 6 during his FBI interview. *See United States v. Matthew Mazzocco*, 1:21-cr-00054 (TSC), Tr. 10/4/2021 at 29-30 ("[The defendant's] remorse didn't come when he left that Capitol. It didn't come when he went home. It came when he realized he was in trouble. It came when he realized that large numbers of Americans and people worldwide were horrified at what happened that day. It came when he realized that he could go to jail for what he did. And that is when he felt remorse, and that is when he took responsibility for his actions.") (statement of Judge Chutkan).

## E.     The Importance of the Guidelines

"The Guidelines as written reflect the fact that the Sentencing Commission examined tens of thousands of sentences and worked with the help of many others in the law enforcement community over a long period of time in an effort to fulfill [its] statutory mandate." *Rita v. United States*, 551 U.S. 338, 349 (2007). As required by Congress, the Commission has "'modif[ied] and adjust[ed] past practice in the interests of greater rationality, avoiding inconsistency, complying with congressional instructions, and the like.'" *Kimbrough v. United States*, 552 U.S. 85, 96 (2007) (quoting *Rita*, 551 U.S. at 349); 28 U.S.C. § 994(m). In so doing, the Commission "has the capacity courts lack to base its determinations on empirical data and national experience, guided by professional staff with appropriate expertise," and "to formulate and constantly refine national

sentencing standards." *Kimbrough*, 552 U.S. at 108 (cleaned up). Accordingly, courts must give "respectful consideration to the Guidelines." *Id.* at 101.

F.   **Unwarranted Sentencing Disparities**

Section 3553(a)(6) of Title 18 directs a sentencing court to "consider … the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."  So long as the sentencing court "correctly calculate[s] and carefully review[s] the Guidelines range, [it] necessarily [gives] significant weight and consideration to the need to avoid unwarranted disparities" because "avoidance of unwarranted disparities was clearly considered by the Sentencing Commission when setting the Guidelines ranges." *Gall v. United States*, 552 U.S. 38, 54 (2007). In short, "the Sentencing Guidelines are themselves an anti-disparity formula." *United States v. Blagojevich*, 854 F.3d 918, 921 (7th Cir. 2017); *accord* United States v. Sanchez, 989 F.3d 523, 540 (7th Cir. 2021). Consequently, a sentence within the Guidelines range will ordinarily not result in an unwarranted disparity. *See United States v. Smocks*, D.D.C. 21-cr-198 (TSC), Sent. Hrg. Tr. at 49 ("as far as disparity goes, … I am being asked to give a sentence well within the guideline range, and I intend to give a sentence within the guideline range.") (statement of Judge Chutkan).

Moreover, Section 3553(a)(6) does not limit the sentencing court's broad discretion "to impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing. 18 U.S.C. § 3553(a). After all, the goal of minimizing unwarranted sentencing disparities in Section 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The "open-ended" nature of

the Section 3553(a) factors means that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id*. at 1095. "As the qualifier 'unwarranted' reflects, this provision leaves plenty of room for differences in sentences when warranted under the circumstances." *United States v. Brown*, 732 F.3d 781, 788 (7th Cir. 2013).[16]

In cases for which the Sentencing Guidelines apply, "[t]he best way to curtail 'unwarranted' disparities is to follow the Guidelines, which are designed to treat similar offenses and offenders similarly." *United States v. Bartlett*, 567 F.3d 901, 908 (7th Cir. 2009). *See id*. ("A sentence within a Guideline range 'necessarily' complies with § 3553(a)(6).").[17]

In *United States v. Creek*, 1:21-cr-645 (DLF), the defendant pushed through a barrier, ran through the front of the crowd, and grabbed a police officer and drove him backward forcefully several feet through the West Plaza, then hit him in the face shield of his helmet.  Creek then gave

---

[16] If anything, the Guidelines ranges in Capitol siege cases are more likely to understate than overstate the severity of the offense conduct. *See United States v. Knutson*, D.D.C. 22-cr-31 (FYP), Aug. 26, 2022 Sent. Hrg. Tr. at 24-25 ("If anything, the guideline range underrepresents the seriousness of [the defendant's] conduct because it does not consider the context of the mob violence that took place on January 6th of 2021.") (statement of Judge Pan).

[17] A routinely updated table providing additional information about the sentences imposed on other Capitol breach defendants is available here: https://www.justice.gov/usao-dc/capitol-breach-cases. To reveal that table, click on the link "SEE SENTENCES HANDED DOWN IN CAPITOL BREACH CASES." The table shows that imposition of the government's recommended sentence in this case would not result in an unwarranted sentencing disparity.

another officer a hard shove in the shoulders and kicked him, causing the officer to fall backward to the ground. Judge Friedrich sentenced Creek to 27 months' incarceration, the middle of the applicable Sentencing Guidelines range.

In *United States v. Miller*, 1:21-cr-75 (RDM), the defendant watched other rioters become violent with police. Miller joined in and encouraged his fellow rioters to push against police lines guarding lower west terrace tunnel. Miller deployed a fire extinguisher and threw objects at officers. Judge Moss imposed a sentence of 33 months' incarceration.

Creek and Jason Owens are the most similarly situated. A comparable sentence is warranted here, where Jason Owens actively impeded officers' passage, stuck an officer in the face, yelled in officers' faces, and then traveled to a second location where he grabbed at another officer's baton. A sentence of 27 months' incarceration would not create an unwarranted disparity with those imposed on similarly situated defendants.

## VII.    RESTITUTION

The Victim and Witness Protection Act of 1982 ("VWPA"), Pub. L. No. 97-291 § 3579, 96 Stat. 1248 (now codified at 18 U.S.C. § 3663), "provides federal courts with discretionary authority to order restitution to victims of most federal crimes."[18] *United States v. Papagno*, 639 F.3d 1093, 1096 (D.C. Cir. 2011). Generally, restitution under the VWPA must "be tied to the loss caused by the offense of conviction," *Hughey v. United States*, 495 U.S. 411, 418 (1990); identify a specific victim who is "directly and proximately harmed as a result of" the offense of conviction,

---

[18] The Mandatory Victims Restitution Act, Pub. L. No. 104-132 § 204, 110 Stat. 1214 (codified at 18 U.S.C. § 3663A), which "requires restitution in certain federal cases involving a subset of the crimes covered" in the VWPA, *Papagno*, 639 F.3d at 1096, does not apply here. *See* 18 U.S.C. §3663A(c)(1).

18 U.S.C. § 3663(a)(2); and is applied to costs such as the expenses associated with recovering from bodily injury, 18 U.S.C. § 3663(b). At the same time, the VWPA also authorizes a court to impose restitution "in any criminal case to the extent agreed to by the parties in a plea agreement." *See* 18 U.S.C. § 3663(a)(3). *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008).

Those principles have straightforward application here. The parties agreed, as permitted under 18 U.S.C. § 3663(a)(3), that Jason Owens must pay $2,000 in restitution to the Architect of the Capitol, which reflects in part the role Owens played in the riot on January 6.[19] Plea Agreement at ¶ 13. As the plea agreement reflects, the riot at the United States Capitol had caused "approximately $2,881,360.20" in damages, a figure based on loss estimates supplied by the Architect of the Capitol and other agencies as of October 2022. *Id.* Jason Owens' restitution payment must be made to the Clerk of the Court, who will forward the payment to the Architect of the Capitol. *See* PSR ¶104. The victim in this case, Officer N.D. is not seeking restitution.

---

[19] Unlike under the Sentencing Guidelines for which (as noted above) the government does not qualify as a victim, *see* U.S.S.G. § 3A1.2 cmt. n.1, the government or a governmental entity can be a "victim" for purposes of the VWPA. *See United States v. Emor*, 850 F. Supp.2d 176, 204 n.9 (D.D.C. 2012) (citations omitted).

## VIII.   CONCLUSION

For the reasons set forth above, the government recommends that the Court impose a sentence of twenty-seven months incarceration, three years of supervised release, and restitution as later determined by the Court.[20]

<div align="center" style="margin-left:40%">

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY

BY:   */s/ Rebekah E. Lederer*
REBEKAH E. LEDERER
Assistant United States Attorney
Bar No. PA 320922
601 D Street, N.W.
Washington, D.C. 20001
(202) 252-7012
Rebekah.Lederer@usdoj.gov

</div>

---

[20] The government has identified no information that Jason Owens has raised any funds based on his participation in the January 6 riot. This Court has stated that the raising of such funds is a fact it will consider when deciding whether to impose a criminal fine.